IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 17, 2017

**STATE OF TENNESSEE v. CHRISTOPHER JONES**

**Appeal from the Criminal Court for Sullivan County**
**No. S64928   James F. Goodwin, Judge**

_____

**No. E2016-00769-CCA-R3-CD**

_____

Defendant, Christopher Jones, appeals the trial court's order requiring him to serve in confinement his effective two-year sentence resulting from his guilty pleas to reckless aggravated assault, reckless endangerment, driving under the influence of an intoxicant (DUI), simple possession of buprenophine (a Schedule III drug), and simple possession of marijuana (a Schedule VI drug).  Upon reviewing the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Ricky A.W. Curtis, Blountville, Tennessee, for the appellant, Christopher Jones.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Barry Staubus, District Attorney General; and Benjamin Rowe, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

*Guilty Pleas*

At the guilty plea hearing the State and Defendant stipulated that the summary of the facts contained in the presentence report, as taken from the narrative/case notes of Officer K. Frederick of the Bristol Police Department, was accurate and sufficient to provide a factual basis for the offenses of reckless aggravated assault, reckless endangerment, driving under the influence (DUI), simple possession of buprenorphine, a

Schedule III drug, simple possession of marijuana, and failure to exercise due care while driving a motor vehicle:

On 9/28/14 at 6:00 p.m. I, Officer Frederick, responded with Officer Joe Newman to Highway 394 at White Top[] Rd. in reference to a traffic accident. Upon arrival, I saw a black Chevrolet pickup truck with the NC registration of BZ2597 on the shoulder of the west bound lane. Underneath the front of the pickup truck was a white Suzuki motorcycle with the TN registration of 63ZK00 belonging to [Defendant]. The driver of the Chevy pickup was identified as Amy Thompson. Her husband, Brandon Lee Thompson, was in the front seat passenger seat while their 12[-] year old son was in the back[] seat on the driver-side of the vehicle. None of the occupants of the Chevy pickup reported having injuries. [Defendant] was standing on the hillside on the other side of the guardrail at the right side passenger door of the pickup smoking a cigarette. A female who later identified herself as Angela Whitaker was on the ground behind and to the right of the vehicle. The fire department was already on the scene and was tending to a female. It was determined that [Defendant] was driving a Suzuki motorcycle while Angela Whitaker was on the back of the motorcycle. There was significant debris from the motorcycle that was scattered at the scene. I tried to speak to [Defendant] but he seemed to be in a daze and was unable to state what happened. He did not express any concern for the female who had been his passenger. It was unknown at that time if his condition was due to the accident or if he was under the influence of alcohol/or drugs. Even the first responders with the fire department believed his behavior was odd and not common with somebody involved in a accident. [Defendant] was transported to BRMC by Rescue 2. Officer Bush responded to the emergency room to follow up with [Defendant] who refused to submit willingly to a blood test. Officers had spoken to [Defendant] when he had responded to the scene of a motorcycle accident at 2010 Weaver Pike the night before to pick up the motorcycle which was involved in that accident (OCAC2014006339). The owner of the motorcycle, Steven Bryant, was found to be in possession of methamphetamine, and a small amount of green plant like substance that had the appearance and smell of marijuana. The family of [Defendant] remained on the scene after he was transported to the hospital and kept asking about getting the motorcycle and his personal belongings. Due to his suspicious circumstances, Sgt. Matthew Cousins then requested that officer Chesney Griffin respond to the scene to have K9 Ruger conduct an open air sniff of the area. At the request of Sgt. Still I transported the driver of the Chevy, Amy Thompson, to the hospital for a voluntary blood draw. The blood was collected and I escorted her back to the

scene. When I arrived back on the scene Officer Griffin had already had K9 Ruger conduct an open air sniff of the area. She reported K[]9 Ruger alerted on the back seat of the motorcycle. As well as, the area near where [Defendant] was standing. During a search of the area, Officer Keese located what appeared to be a "Joint" which was a green plant like substance that had the appearance and odor of marijuana rolled up in rolling paper. Officer Griffin also reported that K[]9 Ruger was trying to get into the area between the guardrail and the truck. Upon checking this area, Officer Griffin located a cellophane cigarette wrapper that contained three whole pills and one half of a pill all of which were the same in appearance. The round white pills with inscription 54 411 had the appearance identical with that of Suboxone (Schedule III). These items were collected as evidence and are being sent to the TBI Lab for identification. An accident report was also completed.

*Sentencing Hearing*

Trial counsel indicated that the presentence report had been filed and that he had reviewed it with Defendant. He also stated that Defendant agreed to proceed immediately to sentencing. Trial counsel then entered into evidence two letters from Defendant's present employer, "Crosswhite AC Services."

Katheryn Strouth, Defendant's mother, acknowledged that Defendant had been sentenced to the Department of Correction for previous offenses and was released in 2012. Other than the present offenses, Defendant had not had any further legal difficulties. Ms. Strouth testified that she has had constant contact with Defendant since his release from prison, and he lived in Bristol with his two sons, ages 10 and 2. She said that Defendant was both the "primary residential parent" and the "full legal custodian" of the two children. Ms. Strouth testified that the children would be "devastated" if Defendant were to be incarcerated, and she felt that they would become "wards of the state" due to the lack of family resources to care for them. She said that employees of the Department of Children's Services and various members of law enforcement had stopped by Defendant's house for welfare checks on the children, and they had never found anything improper during their search. On cross-examination, Ms. Strouth testified that she had not witnessed any drug use by Defendant since 2012.

**Analysis**

Defendant argues that the trial court erred in ordering him to serve his effective two-year sentence in confinement. The State responds that the trial court did not abuse its discretion in ordering Defendant to serve his sentence in confinement. We agree with the State.

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v. Caudle*, our Supreme Court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012). Under the 2005 amendments to the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court must state on the record the factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e); *Bise*, 380 S.W.3d at 706. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a

favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds, State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

When imposing a sentence of full confinement, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant [.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2),(4).

Defendant pled guilty to reckless aggravated assault, a Class D felony, reckless endangerment, a Class E felony, DUI, a Class A misdemeanor, possession of a Schedule III drug, a Class A misdemeanor, simple possession of marijuana, a Class A misdemeanor, and failure to exercise due care, a Class C misdemeanor. Defendant's conviction for failure to exercise due care was merged with his conviction for reckless aggravated assault, and he was sentenced as a Range I, standard offender to an effective two-year sentence. As a standard offender convicted of Class D and Class E felonies, Defendant is eligible for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6).

Defendant concedes that that trial court considered the appropriate sentencing factors and the principles of sentencing, and the record supports this determination. In finding that Defendant's sentence should be served in confinement, the trial court said:

> So [Defendant's] prior criminal history starts on page 6 and as [defense counsel] pointed out most everything happened before 2012 but there's a lot that happened before 2012. The Court notes that [Defendant] is currently a 29[-] year old male. He has numerous felony convictions out

of the Commonwealth of Virginia, a grand larceny. Any case that's been dismissed, [defense counsel], I'm not going to consider; manufacture of a controlled substance, possession of a gun while selling a pound of marijuana, aggravated burglary, that's in Sullivan County. I think that's the sentence that he had to serve in the department of correction[]. The theft went along with that aggravated burglary. The criminal history on page 9, his criminal history started on page 6, it goes through page 9. It shows that he had - - his history of supervision that he has had a violation of probation in the past which is because of the Sullivan County aggravated burglary that he had to serve in the department of correction[] and he was positive for drugs is what caused him to have to serve that. It looks like also on page 9 that he has cases in Washington County Virginia Circuit Court that he's on an appeal bond for which are a series of animal violation cases which I don't know what animal violation is but - - is he aware of those or - -

\*     \*     \*

Beginning on page 10 [Defendant] recounts his alcohol and drug use specifically with regard to marijuana. He states that he started using marijuana at age 21. He describes his use as daily, last use into 2015, morphine, Lortab and Percocet. He reported his last illegal use - - he reports that he became addicted after an accident. Last reported illegal use was in January of this year, 2016. Methamphetamine, he reports that he started taking methamphetamine at age 21. He says his last use was in August of 2015. He has received some treatment for his addiction to pain medication, basically gone to a Suboxone clinic. He is employed with Crosswhite AC Sales and Services and we have a letter from Mr. Crosswhite and the Crosswhite family on his behalf. [Defense counsel] this isn't the normal crash case that comes before the Court, I grant you that, but he had pled guilty and in his statement, [Defendant's] statement at page 5 he recites that he was sitting at a stop sign while on White Top Extension, that he was struck by a truck heading down 394; says he was sitting at the stop sign when the truck turned down White Top Road, eased out of the traffic to look around the truck when the driver of the truck "thought I was going to try and beat her and so she corrected into me." He admitted he had no license or insurance at the time and that was January 14th, 2016 when he made that statement so he had taken responsibility and I give him credit for that. He has a lengthy prior record. He has felony convictions in excess of what would take to make a Range I offense so he pled as a Range I offender. Probation had been tried unsuccessfully in the past. He has continued using drugs while on bond in this case and according to his statement - - well, according to his

- 6 -

reporting on pages 10 and 11 he's continued to use marijuana, morphine, Lortab, Percocet, methamphetamine while he was on bond while this case was pending. We sent him and had him drug tested back in September of last year and it was positive for all those things that he's admitted to. Based on all those findings he's going to have to serve his 2 year sentence at 30%. He will come out on determinate release. When he does come out on determinate release the conditions of the plea that I read in, those will all apply and I want him to be evaluated for drug and alcohol and have - - complete whatever treatment to try to get him off of drugs. If we don't get him off the drugs he might as well not come out and I hope that, he's 29 years old and he's got two kids who are absolutely going to be dependent on him when he gets out so I'm hoping that he'll realize that.

The record supports the trial court's findings. Initially, the State asserts that although Defendant is eligible for probation, he not considered a favorable candidate for probation. "[A] Defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate for alternative sentencing." T.C.A. § 40-35-102(6)(A). "Separate periods of incarceration or supervision" have been defined to mean "that the *defendant serves and is released or discharged from a period of incarceration or supervision for the commission of a felony prior to committing another felony*. T.C.A. § 40-35-102(6)(B)(emphasis added). Defendant was convicted on November 13, 2007, in Tennessee of aggravated burglary and theft, and he received a three-year suspended sentence. He was found on January 11, 2008, to having violated his probation. Defendant was also charged in Virginia with two counts of manufacturing a controlled substance and possession of a gun during the sale of marijuana. The presentence report reflects that the date for the offenses was January 23, 2009. Defendant also committed the offense of grand larceny in Virginia on June 8, 2010. The two sets of offenses were disposed of on November 8, 2010. Defendant received concurrent five-year sentences that were suspended with two years on probation. The present offenses, Defendant's third set of offenses, were committed on September 28, 2014. Although Defendant committed three sets of offenses, we cannot determine from the presentence report that Defendant had been *released from supervision* from his Tennessee offenses of aggravated burglary and theft when he committed the Virginia offenses of two counts of manufacturing a controlled substance and possession of a gun during the sale of marijuana on January 23, 2009. Defendant also committed the offense of grand larceny in Virginia on June 8, 2010. The two sets of offenses were disposed of on November 8, 2010. Therefore, Defendant is considered a favorable candidate for probation.

In any event, Defendant's extensive criminal history and his lack of success while on probation for previous offenses justify the denial of alternative sentencing. The 29-year-old Defendant has prior convictions for aggravated burglary, theft, two counts of

manufacturing a controlled substance, possession of a gun during the sale of marijuana, and grand larceny, and Defendant violated his probation on the aggravated burglary and theft convictions. The trial court also stated: "We sent him and had him drug tested back in September of last year and it was positive for all those things that he's admitted to." In this case, we do not have to, and thus have not, relied on Defendant's admissions to using drugs to justify the denial of alternative sentencing. Defendant is not entitled to relief in this appeal.

**Conclusion**

For the foregoing reasons, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE